UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THOMAS CENSKE,

             Plaintiff,                                   Hon. Richard Alan Enslen

v.                                                 Case No. 5:04 CV 107

CLINTON COUNTY
SHERIFF'S DEPARTMENT, et al.,

             Defendants.

_____/


## REPORT AND RECOMMENDATION

       This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>.  (Dkt. #95 and 96).  Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions for dismissal or summary judgment, the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action **dismissed**.


## BACKGROUND

       On April 30, 2002, Plaintiff was charged with (1) Making a False Statement During a Firearm Purchase and (2) Being a Mental Defective in Possession of a Firearm.  *See United States v. Censke*, case no. 2:02-cr-22, dkt. #1 (W.D. Mich.).  On May 20, 2002, the Honorable Timothy P. Greeley ordered that Plaintiff undergo a psychological examination to determine whether he "is currently, or was at the time the alleged offense was committed, suffering from any mental disease or defect," and if he

"is able to understand the nature and consequences of the proceedings against him and to effectively assist counsel in his own defense." *United States v. Censke*, case no. 2:02-cr-22, dkt. #9 (W.D. Mich.).

On November 13, 2002, Judge Greeley (based on the results of the court-order psychiatric evaluation) concluded that while Plaintiff "suffers from a severe mental illness" which "will continue to require treatment" he was nonetheless competent to stand trial. *United States v. Censke*, case no. 2:02-cr-22, dkt. #38 (W.D. Mich.). Following this determination, however, Plaintiff began engaging in "bizarre behavior" and refused to cooperate with his attorney. Accordingly, on February 7, 2003, the Court again ordered that Plaintiff undergo a psychiatric evaluation to assess his competency to stand trial. *United States v. Censke*, case no. 2:02-cr-22, dkt. #38 (W.D. Mich.).

This evaluation was completed on April 1, 2003, and on April 16, 2003, Plaintiff was transferred back to the Western District of Michigan for further proceedings. (Dkt. #110, Exhibit at 7, 39). Following his return to the Western District, Plaintiff was initially housed in the Marquette County Jail and the Newaygo County Jail. *Id.* at 7-8. On June 10, 2003, Plaintiff was transferred to the Clinton County Jail. *Id.* at 8. Plaintiff was housed in the Clinton County Jail from June 10, 2003, until June 13, 2003, and again from June 24, 2003, until June 25, 2003. *Id.* at 9. The events giving rise to the present action occurred during Plaintiff's two brief stays at the Clinton County Jail.

Plaintiff asserts that Defendants violated his constitutional rights during each of his two stays at the Clinton County Jail. (Dkt. #1). Plaintiff asserts that during his initial stay, he was choked and put in a holding cell for four days without being permitted to exercise or shower. Plaintiff next asserts that on his second stay he was "shot at point blank range" with a riot gun and placed in a restraining chair. Plaintiff also asserts that during his stays at the Clinton County Jail he was denied mental health treatment. *Id.*

## SUMMARY JUDGMENT STANDARD

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996); *Aiken v. The City of Memphis*, 37 F.3d 1155, 1161 (6th Cir. 1994). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also, Terry Barr Sales Agency v. All-Lock Co. Inc.*, 96 F.3d 813, 819 (6th Cir. 1996) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also, Terry Barr Sales Agency*, 96 F.3d at 819; *Schaffer v. A.O. Smith Harvestore Products, Inc.*, 74 F.3d 722, 727 (6th Cir. 1996). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989) (quoting *Matsushita Electric Ind. Co.*, 475 U.S. at 587); *see also, Schaffer*, 74 F.3d at 727.

As the Sixth Circuit has recognized, Supreme Court decisions have encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir.

1992).  Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient."  *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd Board of Education*, 106 F.3d 135, 140 (6th Cir. 1997).  Furthermore, mere allegations do not suffice.  *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

## I.          Exhaustion

Defendants assert that Plaintiff's complaint must be dismissed because Plaintiff has failed to properly exhaust his administrative remedies with respect to the claims asserted therein.  Plaintiff disputes this contention, asserting that officials at the Clinton County Jail refused his requests to submit a grievance.  (Dkt. #116, Exhibit A at 79).  Based on the present record, there exist legitimate factual disputes as to whether Plaintiff has pursued all *available* administrative remedies prior to initiating the present action.  *See* 42 U.S.C. § 1997e(a) (inmates are required to exhaust only "such administrative remedies as are available").  Accordingly, the Court recommends that Defendants' request to dismiss Plaintiff's action for lack of exhaustion be denied.

## II.         Plaintiff's Claims Against Clinton County

Plaintiff initiated this action against the Clinton County Sheriff's Department, as well as various "unknown officers" employed at the Clinton County Jail.  Defendant Clinton County Sheriff's Department asserts that Plaintiff's claims against it must be dismissed because it is not a separate legal entity capable of being sued.  The Court agrees.  *See, e.g., Telfor v. Wittkopp*, 2005 WL 3312559 at *3

(W.D. Mich., Dec. 7, 2005) (Enslen, J.).  Thus, Plaintiff's claims against Defendant Clinton County Sheriff's Department must be dismissed.

Read indulgently, however, Plaintiff's complaint may be interpreted as also asserting claims against Clinton County, an entity which is amenable to suit.  *See Alkire v. Irving*, 330 F.3d 802, 814 (6th Cir. 2003) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)) (local governments, municipalities, and counties are considered "persons" within the meaning of § 1983 and "may be sued for constitutional deprivations").  Even if so interpreted the result is the same.

While counties are considered "persons" for purposes of § 1983 liability, counties are not liable for every misdeed of their employees and agents.  Instead, municipal liability under § 1983 may only attach where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of.  *Graham v. County of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004).

Accordingly, Plaintiff must establish the following elements: (1) that a constitutional violation occurred, and (2) that Defendant is responsible for that violation.  *Id.*  With respect to the second element, Plaintiff must "identify the policy, connect the policy to [Defendant] itself and show that the particular injury was incurred because of the execution of that policy." *Id.* at 383.  Plaintiff must establish the existence of "a direct causal link" between the policy and the alleged constitutional violation "such that [Defendant's] 'deliberate conduct' can be deemed the 'moving force' behind the violation." *Id.*

Plaintiff has failed to identify any policy or custom which he alleges is responsible for (or in any way related to) the harms he allegedly suffered.  In sum, Plaintiff has failed to submit any evidence from which a reasonable person could conclude that the injuries he allegedly suffered were

caused by any policy or custom of Clinton County, the Clinton County Jail, or the Clinton County Sheriff's Department.  Accordingly, to the extent Plaintiff's complaint is interpreted as asserting claims against Clinton County, the County is entitled to summary judgment.

**III.**          **Plaintiff's Claims that He was Subjected to Excessive Force**

As previously noted, Plaintiff asserts that certain "unknown officers" violated his constitutional rights during each of his two stays at the Clinton County Jail.  Plaintiff claims that during his first visit, he was choked and put in a holding cell for four days without being permitted to exercise or shower.  Plaintiff claims that during his second stay he was "shot at point blank range" with a riot gun and placed in a restraining chair.  Plaintiff also asserts that he was denied mental health treatment.  As discussed below, however, the Court concludes that there exist no questions of fact regarding Plaintiff's treatment at the Clinton County Jail and, furthermore, that the jail officials are entitled to summary judgment.

A.          June 10, 2003 through June 13, 2003

On the evening of June 10, 2003, Officer Mark Esch discovered Plaintiff's identification wristband lying outside of Plaintiff's cell.  (Dkt. #116, Exhibit A at 3; Esch Affidavit, Dkt. #96; Helms Affidavit, Dkt. #96).  Esch and Officer Ben Helms later approached Plaintiff regarding the matter.  Plaintiff acknowledged removing his identification wrist band.  When informed that he was required to wear an identification wristband, Plaintiff "became very oppositional and defiant," telling the officers, "I fuckin' took it off, you ain't puttin' another one on me so what the fuck you gonna do."

At this point, Officer Esch instructed Plaintiff to get off his bunk and stand on the floor. Plaintiff refused.  Officer Esch then informed Plaintiff that he "was going to lockdown."  Plaintiff was informed that if he did not comply willingly he would be forcibly removed from his cell.  Plaintiff eventually agreed and "walked into the hall" where he was handcuffed.  After Plaintiff was handcuffed, another officer, Officer Lott, instructed Plaintiff to "walk down the hall."

At this point, Plaintiff "erupted" and became "very profane and vulgar" towards Officer Lott, telling her, "fuck you, you fucking cunt, I don't have to do shit you say, bitch."  Officer Helms then "restrained [Plaintiff] and placed him against the wall until [Plaintiff] could calm down."  Plaintiff eventually calmed down, at which point he was escorted to lockdown.  After arriving in lockdown, Plaintiff told the officers that "they didn't know who they were dealing with and that he could have someone wait for them in the parking lot after work and kill them."  *Id.*

Plaintiff does not deny that this incident occurred in the manner described by Officers Esch and Helms.  Nor has Plaintiff presented evidence refuting the description offered by Officer Esch and Helms in their affidavits and incident report.  Plaintiff acknowledges that he used profanity towards Officer Lott.  (Dkt. #96, Exhibit B at 9).  However, Plaintiff asserts that his conduct constituted "legitimate speech not assaultive conduct." (Dkt. #117 at 5).  Plaintiff further asserts that Officer Helms' conduct violated his Eighth Amendment right to be free from cruel and unusual punishment.

While the Eighth Amendment does not apply to pretrial detainees such as Plaintiff, *see Linden v. Washtenaw County*, 167 Fed. Appx. 410, 415 (6th Cir., Jan. 6, 2006), through application of the Due Process Clause of the Fourteenth Amendment, "pretrial detainees are entitled to the same Eighth Amendment rights as are other inmates."  *Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005).

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  The excessive use of force which results in the unnecessary and wanton infliction of pain violates this provision.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Thus, an assault by a prison official can constitute cruel and unusual punishment, despite the fact that the prisoner did not suffer severe physical injury.  *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992).

Claims alleging the excessive use of force have both a subjective and an objective component.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).  The objective component of the analysis examines whether the pain or deprivation allegedly suffered by the prisoner was "sufficiently serious" to implicate the Eighth Amendment.  *Id.*  To be "sufficiently serious," the prison official's act or omission must deny the prisoner of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), as defined by contemporary standards of decency.  *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The subjective component of the analysis examines whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith."  *Wilson*, 501 U.S. at 299.  In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Whitley*, 475 U.S. 320-21.  When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to temper the severity of the response.  *Hudson*, U.S. at 7.  The absence of injury, while relevant, is not dispositive.  *Id.*

Plaintiff has presented no evidence from which a reasonable person could conclude that he suffered pain or deprivation sufficient to implicate the Eighth Amendment. Moreover, even if Plaintiff could make such a showing, Plaintiff has failed to present evidence that Officer Helms (or anybody else) acted with the intent to cause harm. As discussed above, the evidence shows that Plaintiff acted in a defiant and threatening manner which necessitated his restraint. However, the evidence also shows that Officer Helms applied only that amount of force necessary to regain control of the situation. Moreover, there is no evidence that Plaintiff needed (or even requested) medical care following this incident. In sum, Plaintiff has presented no evidence from which a reasonable person could conclude that there exists a genuine issue of material fact regarding Plaintiff's claim that Defendants employed excessive force. Accordingly, the officers involved in this incident are entitled to summary judgment.

As for the statement in Plaintiff's complaint that he was placed in lockdown for four days without exercise or a shower, Defendants are likewise entitled to summary judgment. Plaintiff has failed to identify any of the individuals responsible for this alleged deprivation. Plaintiff has also failed to present any evidence in support of this particular claim, but is instead simply relying on the allegations in his complaint. As previously noted, however, summary judgment in favor of a defendant is appropriate where the plaintiff merely relies on the claims asserted in his complaint. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claim that he was denied exercise and a shower during his confinement in lockdown.

B.      June 24, 2003 through June 25, 2003

On the evening of June 24, 2003, at approximately 6:30 p.m., Plaintiff began "kicking his cell door and beating on things within the cell." (Dkt. #116, Exhibit A at 5; Hoskins Affidavit, Dkt.

#96). Officer Monica Hoskins instructed Plaintiff to discontinue his destructive behavior. Plaintiff refused to comply and instead continued kicking his cell door. He also began verbally abusing Officer Hoskins.

Several other officers joined Officer Hoskins in an attempt "to subdue" Plaintiff. The food slot to Plaintiff's cell was opened and Officer Hoskins instructed Plaintiff to back up to the food slot so that he could be handcuffed. Rather than comply with this instruction, Plaintiff yelled "fuck you" and stationed himself by his cell door "in a threatening manner, appearing ready to pounce on the correction officers once the cell door was opened." Officer Hoskins warned Plaintiff that if he did not comply, she would fire a pepperball gun into his cell. Plaintiff refused to comply and Officer Hoskins fired the pepperball gun "several times" into Plaintiff's cell. Plaintiff ignored instructions to move away from his food slot so that the peppergun could be fired into his cell. As a result, one of the projectiles struck Plaintiff in the stomach.

A few minutes later - after the pepper powder had taken effect - Plaintiff "quieted down." At this point, Officer Hoskins "checked on [Plaintiff] who advised that he was fine." At approximately 6:48 p.m., another officer checked on Plaintiff. Plaintiff stated that he was "fine" and "just wanted to see how the f-ing pepperball gun worked." At 7:00 p.m. Plaintiff stated to Officer Hoskins that he was "okay." At 7:30 p.m., Plaintiff was examined by a nurse. Plaintiff told the nurse that he was "okay" and was "just thinking of more shit to do."

At 8:00 p.m. Officer Hoskins offered to move Plaintiff to a different cell "that was clean and free of pepperball gun debris." Plaintiff responded to this gesture by again becoming violent, kicking his door and striking his telephone. At this point, Officer Hoskins determined that Plaintiff should be placed in a restraint chair "in order to gain control of the situation and to prevent [Plaintiff]

from being a threat to himself and others."   Officer Hoskins requested assistance from additional officers.  By the time these additional officers arrived, Plaintiff had covered the floor of his cell with soap and water so that the officers "would fall when they came in to restrain him."

Plaintiff was instructed to lie face down on the floor so that the officers could restrain him.  Plaintiff complied and was placed into the restraint chair without incident.  *Id.*  Officers checked on Plaintiff every 15 minutes, checking his handcuffs and offering him restroom breaks.  (Dkt. #116, Exhibit A at 5; Hoskins Affidavit, Dkt. #96; Dkt. #119).

While Plaintiff may have suffered pain or deprivation in this encounter sufficient to implicate the Eighth Amendment, he has failed to present any evidence from which a reasonable person could conclude that Officer Hoskins (or anybody else) acted with the intent to cause harm.  Plaintiff does not dispute engaging in the violent conduct which prompted the use of the peppergun and restraint chair. When asked whether he was kicking his cell door, Plaintiff testified, "I don't recall."  (Dkt. #96, Exhibit B at 12).  The evidence shows that Officer Hoskins used only that amount of force necessary to prevent Plaintiff from hurting himself and/or others.  Moreover, there is no evidence that Plaintiff required medical care following this incident.   In sum, Plaintiff has presented no evidence from which a reasonable person could conclude that there exists a genuine issue of material fact regarding Plaintiff's claim that Defendants employed excessive force.  Accordingly, the officers involved in this incident are entitled to summary judgment.

**IV.        Plaintiff's Claims that He was Denied Medical Treatment**

Plaintiff claims that he was improperly denied mental health treatment during his brief stays in the Clinton County Jail.  Plaintiff has not indicated whether he is asserting this claim against the

County or against individual officers employed at the Clinton County Jail.  For the same reasons articulated above, to the extent that this claim is asserted against the County, it is entitled to summary judgment.  To the extent that Plaintiff is asserting this claim against individual officers, the Court notes that Plaintiff has failed to identify which officers allegedly denied him treatment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).  Accordingly, the Eighth Amendment prohibits the "deliberate indifference" to an inmate's "serious medical needs."  *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendants' conduct is evaluated consists of two-steps.  First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.  In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

In other words, Plaintiff must establish that Defendants "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it."  *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*,

511 U.S. at 847).  However, when an inmate claims that his requests for medical treatment were delayed (rather than denied), the objective component of the analysis focuses on the effect of the alleged delay in treatment.  *See Napier*, 238 F.3d at 742.

Plaintiff was housed at the Clinton County Jail, at the request of the United States Marshal, while he awaited trial on federal weapons charges.  (Dkt. #96, Vetter Affidavit).  On June 11, 2003, an unidentified Captain with the Clinton County Sheriff's Department authored a memorandum to the United States Marshal regarding Plaintiff.  The Captain informed the United States Marshal that Plaintiff "appears to be very mentally unstable and physically aggressive towards female staff members." (Dkt. #110, Exhibit A at 1).  The Captain further stated that "I feel our facility does not have the treatment available that [t]his subject is going to need during confinement."  *Id.*  Plaintiff was removed from the Clinton County Jail two days later.  His latter stay at the Clinton County Jail lasted less than 24 hours.  (Dkt. #96, Vetter Affidavit).

When evaluating this particular claim, it must be remembered that ultimate responsibility for Plaintiff rested with the United States Marshal.  Plaintiff was being detained pending a criminal trial in federal court.  Plaintiff was housed at the Clinton County Jail at the request of the United States Marshal.  As the aforementioned letter indicates, officials with the Clinton County Jail were certainly aware that Plaintiff may have been suffering from a mental impairment.  In response, a representative of the Clinton County Sheriff's Department informed the United States Marshal that the Clinton County Jail lacked the ability to properly treat Plaintiff.  Accordingly, the United States Marshal removed Plaintiff from the Clinton County Jail.  In sum, Defendants were aware that Plaintiff may have required mental health treatment and undertook reasonable actions to secure treatment for Plaintiff.  Accordingly, Defendants are entitled to summary judgment as to this particular claim.

V.              **Americans with Disabilities Act Claim**

Plaintiff also appears to assert that Defendants violated his rights under the Americans with Disabilities Act (ADA).  Plaintiff has not indicated whether he is asserting this claim against the County or against individual officers employed at the Clinton County Jail.  This pleading deficiency is of no consequence, however, as Defendants are entitled to summary judgment.

Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *Jones v. City of Monroe, Michigan*, 341 F.3d 474, 477 (6th Cir. 2003) (quoting 42 U.S.C. § 12132).  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices. . .meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity."  *Jones*, 341 F.3d at 477 (quoting 42 U.S.C. § 12131).

As is well recognized, the ADA applies to state prisoners.  *See McKinley v. Bowlen*, 2001 WL 493394 at *1 (6th Cir., May 1, 2001) (*citing Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)).  However, the ADA does not impose liability upon individuals.  *See Lee v. Michigan Parole Board*, 2004 WL 1532563 at *1 (6th Cir., June 23, 2004); *VanderMolen v. City of Roosevelt Park*, 1997 WL 853505 at *1 (W.D. Mich., Oct. 28, 1997) (Enslen, J.).  Thus, a prisoner may not maintain an action for damages against an individual defendant in her personal capacity.

This limitation does not, however, prevent a prisoner from seeking injunctive relief under the ADA against an individual defendant in her official capacity.  *See Miller v. King*, 384 F.3d 1248, 1263-65 (11th Cir. 2004) ("the Eleventh Amendment does not bar ADA suits under Title II for

prospective injunctive relief against state officials in their official capacities"); *Henrietta v. Bloomberg*, 331 F.3d 261, 287-88 (2d Cir. 2003) (a state official sued in his official capacity for prospective injunctive relief is a "public entity" under the ADA because "the real party in interest in an official capacity suit is the government entity").

To make out a prima facie case of discrimination under Title II of the ADA, Plaintiff must establish the following: (1) he has a disability, (2) he is otherwise qualified, and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005). Even assuming that Plaintiff can satisfy the first two elements of this standard, he has failed to present either allegation or evidence that he was subject to discrimination solely because of his disability. Furthermore, Defendants have presented evidence refuting Plaintiff's claim.   (Dkt. #96, Vetter Affidavit).  Accordingly, Defendants are entitled to summary judgment as to this particular claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #95 and 96), be **granted** and Plaintiff's action dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  June 5, 2006                      \_\_/s/ Ellen S. Carmody_____
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge